Columbia, April, 1869.

`GEORGE BROWN *vs.* SARAH CURETON, AND SARAH CURETON *vs.* GEORGE BROWN.

Testator, after a specific bequest of negroes, and a direction that the rest of his negroes be divided, by appraisers, into four lots, as nearly equal as may be, one, including certain named negroes, to be set apart to his son D., and the other three to be taken and drawn for by his other children and some grandchildren, provided a fund to be applied by his executors "in equalizing the lots of negroes which his children and grandchildren would take." The division was made on the 26th December, 1862: *Held*, That those whose lots were valued at less than others were entitled to have the lots equalized out of the fund provided by the will for that purpose; that their rights, in this respect, were not affected by the emancipation which afterwards took place; and that this was not a case of vendor and vendee coming within the provision of the Constitution of 1868 in reference to contracts for the purchase of slaves.

*Held, further*, That those whose lots were of the highest valuation were not liable to account to others for the excess in the value of their lots.

BEFORE JOHNSON, CH., AT NEWBERRY, SEPTEMBER, 1867.

The decree of His Honor the Chancellor is as follows:

JOHNSON, Ch. On the 7th day of August, 1860, Daniel T. Cureton executed his last will and testament, and died on the 16th day of July, 1862, leaving the same unrevoked. Drayton T. Cureton and George Brown, the son and son-in-law of the testator, were appointed the executors of his will, and, soon after his death, proved the same, and assumed upon themselves its execution.

In the second clause of the will, the testator devised to his son, Drayton T. Cureton, a tract of land supposed to contain about twelve hundred acres, in consideration of services rendered by him. In the third clause he bequeathed to his said son, nine negro slaves and a mule, as an equivalent for property, before that time, advanced to his other children.

In the fourth clause he directed that all the rest of his negroes should be valued and divided by five disinterested persons, to be appointed by the Ordinary of the District, "into four lots, as nearly equal as may be practicable, keeping families as much together as may be possible." In the division he directed that London and wife, and their four children, should be included in the lot to be set apart to Drayton T. Cureton at a valuation, and directed that the other three lots should be drawn for as follows, to wit: One lot by his daughter, Lucinda H. Brown, one other lot by his son, James Cureton, and the remaining lot by his grandson, James D. Sheely, for himself and three sisters, Elizabeth C. Sheely, Eve Ann L. Dominick, wife of Andrew Dominick, and Sarah C.

Sheely, who has since intermarried with Joseph L. Harmon. And he directed that the lot that should be drawn for them should be divided into four lots, as nearly equal in value as might be practicable, one of which he gave to each of his four grandchildren.

In the sixth clause he directed that the whole residue of his estate, which consisted, principally, of a tract of land, containing four hundred and eighty-six and one-half acres, stock of all kinds, plantation implements, furniture and provisions, should be sold by his executors " at such time and on such terms as they might think most advantageous " to his estate. And that the net proceeds of such sales, after the payment of his debts, and the amount collected on his choses in action, and the cash on hand, should be applied in equalizing the lots of negroes which his children and grandchildren would take under the fourth clause, and that the balance should be divided into four shares: one for Drayton T. Cureton, one for Lucinda A. Brown, one for James Cureton, and out of the remaining one he gave six thousand dollars to George Brown, in trust, for the sole and separate use of his daughter, Sarah H. Hawkins, during her life, and after her death to her issue, and the balance of the share he gave to her four children, to wit: James D. Sheely, and his three sisters.

On the 18th day of December, 1862, the executors sold all the property which they were required by the will to sell. The personal property was sold on a credit till the first of January, 1864. The land was sold on a credit of one and two years, with interest from the day of sale. The whole sales amounted to $14,-375.48. James Cureton purchased the tract of land for $5,800— a few dollars more than its appraised value—and personal property amounting in value to $941.00; and, to secure the payments for the land, he gave his two sealed notes for two thousand nine hundred dollars each, with sureties; and, on the 7th of January, 1863, paid for his purchases of personal property, and fifty-nine dollars on one of the notes given for the purchase money of the land. And Drayton T. Cureton purchased personal property which amounted in value to $5,776.57, for which he gave his bond, with sureties, to the Ordinary, as required by law.

On the 26th day of December, 1862, E. P. Lake, Ordinary of the District, appointed five disinterested persons, in accordance with the directions of the will, who, after having been sworn, divided the negroes into four lots, and set apart one of them to Drayton T. Cureton, and the others were drawn for by the parties who were en-

titled to draw for the same; and by their return it appears that the lots drawn by Mrs. Brown and James D. Sheely, for himself and sisters, were each valued at $8,500; that the lot drawn by James Cureton was valued at $7,800; and that the lot set apart to Drayton T. Cureton was valued at $7,350. This division was completed, and the return signed, on the 26th day of December, 1862; but, at the request of Drayton T. Cureton, who was managing the plantation, the lot of Mrs. Brown, and perhaps others, was not taken off until some day early in the following month. After the division was made the question was asked by the parties who did it, if it made any difference if the lots were not exactly equal, and the only reply that was made was by Drayton T. Cureton, who said that if his lot was worth less he did not care, but that he did not want it worth more, as he had more negroes than anything else; and it is now sought to set aside the division, because the lots were not equal, and because the above expression was used by one of the parties after the division had been completed. The opinion of the Court is, that the division was made in accordance with the terms of the will, and that the expression used by Drayton T. Cureton in no way affected it. It is also insisted, by the legatees who received the lots of negroes having the highest valuation, that in the division, under the sixth clause of the will, they should not be required to account for any excess in value over their own shares, on the ground, that they did not receive the negroes in their possession until after they were set free by the proclamation of President Lincoln; and, further, that it would be requiring them to pay the purchase money for negro slaves. The division was complete and final before the proclamation of President Lincoln went into operation, and if I believed that, as the law now stands, parties could not be required to pay the obligations given by them for the purchase money of negro slaves, yet I would hold, in this case, that the terms of the will must be carried out, and that the parties must account to others for any excess in the value of their lots, though, by a liberal construction of the Ordinance of the Convention, I think such excess in value may be reduced, if the evidence will show that the prices fixed upon the negroes were affected by the inflated condition of the currency. Objection was made that the land did not sell for as much as it ought to have done, from the fact that it was known that James Cureton wished to purchase it. But there was no evidence showing that there was anything unfair about it, or that it did not sell for its full value.

About the time of the sale a copartnership was entered into be-tween Drayton T. Cureton and James Cureton, to carry on the bu-siness of planting on the lands which they had acquired from the estate of their late father, with the negroes and other property which they had received under his will and by purchase at the sale, but on what terms the Court was not informed. Under the agree-ment James Cureton entered upon the lands, and took possession of all the property, and continued to manage it, and to receive the rents and profits from the same, until the 5th day of February, 1864, when Drayton T. Cureton died, after having first executed his will, by which he bequeathed to James D. Sheely one thousand dollars, and to Elizabeth C. Sheely and Caroline Sheely five hun-dred dollars each, and devised and bequeathed all the residue of his estate to James Cureton, and appointed him executor of the same. He proved the will, and qualified as the executor of the same, and continued in the possession of all the property of his tes-tator's estate until the 29th day of January, 1866, when he died intestate, leaving his widow, Sarah Cureton, and various children, as his heirs-at-law; and, soon after his death, his widow adminis-tered upon his estate, and sold the whole of the personal property which he had in his possession at the time of his death, without dis-tinguishing as to which of the two estates it belonged, for cash in gold, and soon afterwards removed to the State of Georgia, without making any provision for the payment of the purchases made by her intestate, and by Drayton T. Cureton, at the sale of the prop-erty belonging to the estate of their father, or for other debts due by their estates, and without making any settlement with E. P. Lake, who had taken out letters of administration *de bonis non*, with the will annexed, on the estate of Drayton T. Cureton. The first of the above stated bills covers all the matters sought to be determined by the second, and many others; and for that reason there will be no separate orders made in them.

Sarah H. Hawkins, and Eve Ann T. Dominick and husband, Andrew Dominick, ought to have been made parties in the first of the above stated bills; and, before a final settlement of the whole case can be had, it is probable that the land belonging to the estate of James Cureton will have to be sold, and perhaps that of the es-tate of Drayton T. Cureton; and, in either event, the other heirs-at-law of James Cureton will have to be made parties. It is ordered, that the complainant have leave to amend his bill, and make such new parties as he may be advised. It is insisted in the bill, that

James Cureton, by continuing in the possession of the whole estate of Drayton T. Cureton after his death, assented to the legacies given by his will, and that his estate is therefore liable for the same, and also for all the debts due by the estate of the said Drayton; but, taking the times and the circumstances into consideration, I do not think that the position ought to be sustained.

It is ordered and decreed, that the above opinion be taken as the judgment of the Court.

It is also ordered and decreed, that the accounts of the complainant, as executor of Daniel T. Cureton, be referred to the Commissioner, and that he report the extent to which he acted jointly with his executor during his lifetime.

It is also ordered and decreed, that Sarah Cureton, as the administratrix of the estate of James Cureton, do account for his administration of the estate of Drayton T. Cureton, and for Drayton T. Cureton's administration of the estate of Daniel T. Cureton, and for such of the property of Drayton T. Cureton as went into her possession; and, also, that she do account for her administration of the estate of James Cureton.

It is also ordered and decreed, that E. P. Lake do account for his administration of the estate of Drayton T. Cureton.

It is also ordered and decreed, that the Commissioner be at liberty to report such special matter as, in his judgment, may be necessary to settle all the matters connected with the different estates.

It is also ordered and decreed, that the Commissioner do reduce all claims, either for or against the said estates or parties to the said bills, which, under the provisions of the Ordinance of the Convention, ought to be reduced.

And it is also ordered and decreed, that further orders may be taken at the foot of this decree.

The plaintiff, George Brown, appealed, on the grounds:

1. Because His Honor erred in deciding that James Cureton's estate was not liable for the debts and legacies of Drayton Cureton, of whose will he was sole executor and residuary legatee, and who had taken possession of his whole estate, and used it as his own, and was in possession of it at the time of his death; and the personal property of which was sold by the defendant, after his death, as administratrix.

2. Because His Honor erred in deciding that the legatees under the will of Daniel T. Cureton receiving lots of negroes of the great-

est value, to wit: Lucinda Brown and the Sheely children, should be held to account for the overplus to James and Drayton Cureton, who received lots of negroes of a less value.

3. Because His Honor erred in deciding that the legatees whose lots of negroes were most valuable should pay over the overplus of their shares to the other legatees whose shares were less—which is in violation of that part of the Constitution of this State which declares that contracts whose consideration was the purchase of slaves should not be collected.

4. Because the decree of His Honor, in other particulars, is contrary to law and equity.

*Fair*, for appellant.

Oct. 9, 1869. The opinion of the Court was delivered by

WILLARD, A. J. The principal question raised by the complainant's appeal arises upon the construction of certain clauses of the will of Daniel T. Cureton, the testator of George Brown, the complainant in the first case named above. The testator, after making certain dispositions, unimportant to the present question, directs that all the rest of his negroes should be valued and divided by five disinterested parties, to be named by the Ordinary of the District, into four lots, as nearly equal as might be practicable, keeping families together as much as might be possible. He directed that certain specified slaves should be included, at a valuation, in the lot set apart to Drayton T., one of his sons, and that the three other remaining lots should be drawn: one by his son, James, one by his daughter, Lucinda, and one by his grandson, J. D. Sheely, for himself and his sisters—the lot going to grandchildren to be equally divided among them. He further directs that the residue of his estate be sold, and, after payment of debts, the proceeds be applied: first, to equalizing the lots which his children and grandchildren would take under the clauses before referred to, and the balance to be disposed of under subsequent provisions of the will.

The slaves were divided accordingly, but the lots were of unequal value. The question presented is, whether the directions of the will, as to the proceeds of the estate devoted to the equalization of the lots, can be carried into effect by paying to those having the lots of least value a sum sufficient to equalize them on the basis of the valuation ascertained at the time of division. The decree ascertains that the provisions of the will, in regard to the apportion-

ment of the slaves, were carried out, and, there being no appeal from that determination, it must stand as a fact in the case. This fact is of importance, for, if the provisions of the will, directing an apportionment, had been found incapable of enforcement, the subsequent dispositions depending, as to their utility, upon the execution of such antecedent directions, would have failed. But, on the contrary, the very case has arisen that was in the contemplation of the devisor. But it is said that circumstances have occurred not contemplated by the testator, namely: the slaves have become emancipated in the hands of the distributees. The loss of the slaves was the result of a fortuitous event that occurred after the distributees had come into possession of them, under the terms of the will. The intent of the testator, as to equalization, must be tested by the events existing at the time of the apportionment. Then it was that the distributees of the least valuable lots had a right to call for the execution of the equalization clauses in their behalf. It is true the bounty of the testator proved less valuable than he probably anticipated, but not through events that arrested the execution of his declared will and intent.

The clause of the Constitution of this State declaring void contracts, the consideration of which was for the purchase of slaves, has been cited as interfering with the clauses of the will under consideration. This case cannot be brought within that provision, as it is not sought to enforce any contract of that character. The relations of vendor and vendee, inseparable from the idea of such a contract, do not exist in the present case.

The decree, however, goes too far in directing that "the parties must account to others for any excess in the value of their lots." In the present state of the case, all that is appropriate is, that the dispositions made by the will, as to the application of the residue of the estate to the equalization of the lots, should be carried out through the accountings ordered and the proper orders to be made hereafter thereon.

We think that the decree is misapprehended by the first ground of the appeal; but, as the question of the extent of the liability of the estate of James Cureton may well be deferred until the various accounts are complete, the decree will be modified by reserving that question accordingly.

It is ordered, adjudged and decreed, that so much of the decree appealed from as orders that the parties must account to others for

an excess in the value of their lots, and as to so much of said decree as determines that James Cureton, by continuing in the possession of the whole estate of Drayton T. Cureton after his death, did not assent to the legacies given by his will, and that his estate is not liable for the same, nor for the debts due by the estate of said Drayton, the said decree be, and hereby is, modified in such manner as to reserve the consideration of said questions until the accounts are taken which were ordered by said decree.

It is further ordered and decreed, that so much of the sixth clause of the will of Daniel T. Cureton as directs that certain funds be applied in equalizing the lots of negroes which his children and grandchildren would take, under the fourth clause, be established, and that this cause be remanded to the Circuit Court for such proceedings and final decree, upon the principles herein settled, as may be meet and proper, and for the determination of the questions hereinbefore reserved, should they arise; and said decree is, in all other respects, affirmed.

*Moses*, C. J., concurred.